| MAMES F. McKAY, III, Judge.
The appellants, Louisiana Coca-Cola Bottling Co., Ltd. (Coca-Cola), and Mark *622 Owen, appeal the judgment of the trial court whereby the jury rendered a verdict in favor of the plaintiff, Milton Cross, and the intervenor, Transit Management of Southeast Louisiana, Inc., (TMSEL).
FACTS AND PROCEDURAL HISTORY
On May 12, 1994, Milton Cross was employed as a bus driver by TMSEL. Milton had allegedly parked his truck near the intersection of Tulane Avenue and South Pierce Street to let his passengers off and to take a ten-minute break, when the driver of the Coca-Cola truck, Mark Owen, struck Mr. Cross’s bus in some fashion. There are conflicting versions of the accident in evidence. A summation of the appellants’ version is as follows: As the Coca-Cola truck passed the parked bus, the truck’s passenger side mirror touched the side of the bus leaving a small scuff-mark. Mr. Owen claims that he parked his truck and went over to the bus to see if the driver was all right. A summation of the appellee’s version is as follows: The Coca-Cola truck rear-ended the bus, then backed up and struck the |¡>bus for the second time with the mirror. After the impact the bus driver alleges that the truck driver fled the scene. In fact the entire record is replete with contradictory statements by Mr. Cross.
After the jury[1] rendered a verdict the appellants moved for a judgment notwithstanding the verdict (JNOV) and timely motioned for a new trial, which were both denied by the trial court.
The appellants present two assignment of error for this Court to address. First, the appellants assert that the trial court erred by disregarding the medical testimony concerning Mr. Cross’s injuries. Second, the appellants assert that the trial court erred as a matter of law in finding that Mr. Cross carried his burden of proof that the medical history given to treating physicians was correct.
STANDARD OF REVIEW
In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard which precludes the setting aside of a trial court’s finding of fact unless those findings are clearly wrong in light of the record reviewed in its entirety. Cenac v. Public Access Water Rights Assn., 2002-2660 (La.6/27/03), 851 So.2d 1006, citing Rosell v. ESCO, 549 So.2d 840 (La.1989). A reviewing court may not merely decide if it would have found the facts of the case differently, the reviewing court should affirm the trial court where the trial court judgment is not clearly wrong or manifestly erroneous. |¡Ambrose v. New Orleans Police Dep’t Ambulance Serv., 93-3099, 93-3110, 93-3112, p. 8 (La.7/5/94), 639 So.2d 216, 221.
Because the jury verdict is based on a credibility call, we are restrained from finding the jury’s decision to be manifestly erroneous or clearly wrong. The trial court is in a much better position to evaluate live witnesses (as opposed to the appellate court who must review a cold record). Further, this principle of review is designed to ensure the proper allocation of trial and appellate functions between the respective courts. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
In appellants’ first assignment of error they basically argue that but not for the varying medical histories, contradictory statements as to when he was symptomatic for pain and questionable personal history that Mr. Cross gave to his physicians, the physicians would not have attributed Mr. Cross’s injuries to the accident.
The appellants argue that Mr. Cross claimed to Dr. Marrero on May 12, 1994, *623 the same day as the accident, that the Coca-Cola truck had slammed into the rear of his parked bus, throwing his body forward and backward in his seat. Dr. Marrero acknowledged that his opinion regarding medical causation depends on the history, which Mr. Cross gave him.
Appellants argue that the evidence that Mr. Cross was not rear-ended was abundantly clear and absolutely overwhelming. This evidence consisted of Mr. Cross’s statements to three different people at the scene of the accident (Gerald |4Miller[2], Officer Ronald Recasner[3], and Tracy Thi-bodaux[4]), as well as Frank Echols[5] several weeks after the accident. Gerald Miller contends that Mr. Cross told him that the accident was limited to a mirror scuff caused by the passenger side of the Coca-Cola truck touching the side of the bus. Furthermore, Mr. Cross told him that he was not injured. Officer Recasner claims that Mr. Cross told him that the Coca-Cola truck was passing and that its right front door mirror hit the left rear side of the bus. Tracy Thibodeaux claims that Mr. Cross told him that he was not injured. Finally, Frank Echols claims that he first heard of the accident when Mr. Cross made his workers’ compensation claim. Mr. Cross never mentioned that the accident involved a rear end collision. Mr. Echols asserts that he did not hear that this was a rear-end collision until and during the arbitration proceedings concerning Mr. Cross’s termination. He made it clear that TMSEL was under the impression that the accident was limited to a small seuffmark made by the Coca-Cola truck’s mirror. This evidence also consisted of Mr. Cross’s own accident report, which he completed on the day of the accident. In this report, he described his bus as receiving “Light damage to the left rear side of the bus.” He described the damage to the Coca-Cola truck as “Light damage to the front right mirror.” Furthermore, in this report, he diagramed the contact point of the two vehicles indicating that the only contact point was between the passenger side mirror of the truck and the left rear side of the bus. The physical evidence was consistent with | Bthis report. Although, appellants surmise that this scenario is inconsistent with a rear-end collision, we disagree and conclude that the trier of fact had a reasonable basis to draw a different conclusion than asserted by the appellants.[6]
Appellants also propound similar argument in reference to Dr. Shwery, a psychologist that treated Mr. Cross on August 9, 1994, which include further inconsistencies in Mr. Cross’s information that he provide to various other physicians. Mr. Cross told Dr. Shwery that he had been involved in a rear-end collision but did not mention the mirror contact. Mr. Cross also acknowledged that he did not feel any pain at the time of the accident but only later in the day when he felt a pulling and tingling in his back when the made a U-turn on Airline Highway. He also told Dr. Shwery that he had never had any prior accidents or injuries. He also claimed that the injuries caused his marriage to break up which was later proven that he had established a separation five months prior to the accident. Mr. Cross at trial admit *624 ted that the accident had nothing to do with his marriage breakup. Furthermore, he claimed that he was in the National Guard and served in Desert Storm for six months. His military records established that this was untrue.
On October 24, 1994, Mr. Cross purportedly claimed to Dr. Touissant Leclercq that he was in good medical health until the accident. Similar information was given to Dr. Dzung Dinh on December 13, 1994. Dr. George, a neurosurgeon, evaluated Mr. Cross on March 18, 2002; Mr. Cross does not mention to these physicians that he had prior back trouble.
IfiMr. Cross’s military records reflect that on May 7, 1989, he indicated that he had had been involved in a rear-end motor vehicle accident three yeas earlier and that he had experienced low back pain ever since this accident. CT scanning reportedly revealed spinal stenosis and foramina! narrowing. His physician for this condition is indicated to be Dr. Craig Turner. In a note on May 12, 1989, Dr. Turner is reported to have indicated that Mr. Cross had only a twenty-five pound lifting capacity, due to a long-standing back condition. The record indicates that Dr. Turner had been treating Mr. Cross for this condition for seven years, from 1980 to 1987.
All of appellants’ argument can be summarized in asserted conclusions that given more accurate information and medical history, the treating physicians may have concluded different medical causation, other than the accident for Mr. Cross’s condition.
The trial court, like the jury, heard all of the testimony and evidence; in its reasons for judgment denying the appellants’ JNOV it stated:
“Let me say, in hearing the evidence, I was surprised at the jury’s decision in this case. However, I believe that the jury did have evidence upon which to base its decision. Therefore, the Court is going to deny the JNOV.”
This case clearly involves two versions of how the accident and injury arose. Nevertheless, there was a jury trial and a verdict was rendered and a judgment was signed awarding Mr. Cross a significant amount in damages. In Rosell v. ESCO, Supra, the Louisiana Supreme Court discussed the scope of the appellate court’s review of the trial court’s finding of fact as follows:
“It is well settled that a court of appeal may not set aside a trial court’s or a jury’s finding of fact in the absence of ‘manifest error’ or unless it is ‘clearly wrong’ and where there is a conflict in the testimony, reasonable evaluations of the credibility and reasonable inferences of |7fact should not be disturbed upon review, even thought the appellate court may feel that its own evaluations and inferences are as reasonable... .Where there are two permissible views of evidence, the fact finder’s choice between them cannot be manifestly erroneously or clearly wrong.”
In the instant matter albeit there may be contradictions, in particular testimony and statements made by Mr. Cross, clearly the appellants failed to impeach Mr. Cross’s credibility in the eyes of the fact finders, the jury. The finder of fact was present at the trial and was in a better position to evaluate the evidence and the testimony of all of the witnesses than this Court. Therefore, based on the above jurisprudence and the record before us we cannot determine that the finder of fact was manifestly erroneous or clearly wrong in its verdict. Furthermore, we find no error in the trial court’s failure to award judicial interest from the date of judicial demand and from the date of each payment of workers’ compensation indemnity *625 and medical benefits thereafter. Accordingly, we affirm the judgment of the trial court.
AFFIRMED.
MURRAY, J., concurs and assigns reasons.

. The total of the award including both special and general damages was $1,060,000.00.

. Gerald Miller was TMSEL’s field supervisor.

. Ronald Recasner is an officer with the NOPD detailed to RTA to investigate accidents.

. Tracy Thibodaux is an accident investigator for TMSEL.

. Mr. Echols was the TMSEL district manager.

. The jury verdict was nine to four.